IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| TEXAS WORKFORCE COMMISSION | § | |
| | § | |
| Plaintiff | § | |
| V. | § | CASE NO. 3:17-cv-00026 |
| | § | |
| UNITED STATES DEPARTMENT OF | § | |
| EDUCATION, REHABILITATION | § | |
| SERVICES ADMINISTRATION, | § | |
| | § | |
| Defendant. | § | |

## COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

Plaintiff, the Texas Workforce Commission ("TWC"), files this complaint against the United States Department of Education, Rehabilitation Services Administration, and appeals the November 2, 2016, "Decision and Award" filed pursuant to the Randolph-Sheppard Act, 20 U.S.C. § 107 et seq., (the "Act"), and alleges and avers as follows:

## I.    INTRODUCTION

1.    This is an appeal from an arbitration proceeding that was convened by the Department of Education (the "DOE") pursuant to 20 U.S.C. § 107d-1(b) of the Act, relating to whether the Army was required to give priority to TWC in bidding for a new contract at Fort Bliss, Texas pursuant to the Act's mandate to prioritize awarding contracts for cafeteria services to businesses operated by blind individuals.  Specifically, the panel considered the following two questions:

  1)    Is a military dining facilities contract for Dining Facility Attendant ("DFA") services subject to the Act?

2)      Even if all dining facilities contracts for DFA services are not subject to the Act, can the Army eliminate the established Randolph-Sheppard vending facility opportunity for DFA services at Fort Bliss, Texas without obtaining the approval of the Secretary of Education?

2.      After an Evidentiary Hearing on July 19, 2016, the Arbitration Panel (the "Panel") majority found that the Army did not violate the Act when it issued a Solicitation for a dining facilities contract for DFA services without applying the provisions of the Act to the Selection Process. See Exhibit A. However, the Panel majority did not directly address whether the Army could eliminate a Randolph-Sheppard vending facility opportunity without obtaining the approval of the Secretary of Education.

3.      The Court should overturn the Panel's Decision and Award because it is erroneous and contrary to law and the provisions of the Act. The Panel's conclusion that the Act does not apply to a military dining facilities DFA contract pertaining to the provision of cafeteria services violates the Act and its implementing regulations, and thus must be reversed.

## II.     JURISDICTION AND VENUE

4.      Pursuant to 20 U.S.C. § 107d-2, the Decision and Award is subject to appeal and review as a final agency action for purposes of Chapter 7 of Title 5, U.S.C. § 702.

5.      This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331, and 20 U.S.C. § 107d-2. Venue is appropriate here pursuant to 20 U.S.C. § 1391 because the action arose in the Western District of Texas.

## III.     PARTIES

6.      TWC is an agency of the State of Texas and acts as the state licensing agency for Texas pursuant to the Act. TWC is the successor state agency to the Texas Department of Assistive and Rehabilitative Services (DARS), as DARS was abolished by legislative action

effective August 31, 2016 at 12:00 a.m. (midnight). TWC is authorized to bring this action and seeks review of the Decision and Award of the Arbitration Panel convened by the DOE pursuant to the Act.

7.      Defendant, DOE, is the federal agency designed to administer the Act. 20 U.S.C. § 107(b).

### IV.     <u>PROCEDURAL ALLEGATIONS</u>

8.      The Randolph-Sheppard Act was passed and implemented by Congress to provide "blind persons with remunerative employment, enlarging the economic opportunities of the blind and stimulating the blind to greater efforts and striving to make themselves self-supporting" by authorizing them to operate vending facilities on government property and giving them a "priority" to do so. *See* 20 U.S.C. §§ 107(a) and (b). The Randolph-Sheppard program is administered in each state by a state licensing agency (an "SLA").[1] TWC is the SLA for Texas.

9.      Under the Act, whenever TWC determines that the a federal governmental entity, in this case the Army, is failing to comply with provisions of the Act or any regulations issued thereunder (including a limitation on the placement or operation of a vending facility as described in § 107(b) of the Act and the Secretary's determination thereunder), TWC may file a complaint with the Secretary of Education, who shall convene a panel to arbitrate the dispute pursuant to § 107d-2 of the Act. This arbitration panel is composed of members appointed by the parties, and its decision is final and binding on the parties, except as otherwise provided in the Act. The panel's decision is "subject to appeal and review as a final agency action" under the standard set forth in the Administrative Procedure Act (the "APA"). *See* 20 U.S.C. § 107d-2(a).

---

[1] 20 U.S.C. §§ 107a(a)(5), 107(b).

10.     By letter dated July 21, 2014, the SLA predecessor to TWC, the DARS, requested arbitration.[2] By letter dated September 16, 2014, Janet LaBreck, Commissioner of the Rehabilitation Services Administration of the DOE authorized the convening of the Panel in response to DARS's request.

## V.     FACTUAL ALLEGATIONS

11.     The Act was passed by Congress to provide blind persons with gainful employment and to enlarge their economic opportunities.  In order to further these objectives, the Act grants priority to blind entrepreneurs to operate vending facilities, including cafeterias, on federal properties.[3]  Military dining facilities, including the dining facilities at Fort Bliss, are "cafeterias" to which the Act's priority applies.[4] And the Randolph-Sheppard regulations provide that this priority shall apply to all contracts pertaining to the operation of cafeterias on federal property.[5]

12.     When the government contemplates entering a cafeteria contract, the government must invite the appropriate SLA to respond to the solicitation for offers in order to establish if the SLA's blind manager is able to operate the cafeteria.  If the SLA's proposal is judged to be within a competitive range, the contract will be awarded to the SLA.  The contract is then managed by the blind manager as a licensee of the SLA.[6]

13.     From 2003 to 2014, pursuant to contract No. W911SG-04-D-0003 issued to DARS, Harvey Johnson, DARS's licensed blind vendor, provided cafeteria services at six dining halls at Fort Bliss.  Although the Act does not distinguish between contracts pertaining to the

---

[2] As of September 1, 2016, the Texas Legislature transferred DARS's duties with respect to administering the Act and serving as the State's SLA to TWC.
[3] 20 U.S.C. § 107, *et seq.*
[4] *Id.* at §§ 107e(7), 107d-3(e); 34 C.F.R. §§ 395.1(d), 395.33; *NISH v. Rumsfeld*, 348 F.3d 1263, 1270-71 (10th Cir. 2003)*; NISH v. Cohen*, 247 F.3d 197, 204-06 (4th Cir. 2001).
[5] 34 CFR § 395.33(c).
[6] *Id.* at § 395.33(b).

operation of a cafeteria, Army Regulations refer to two types of military dining facility contracts: Full Food Service and Dining Facility Attendant. Some of the dining halls that Mr. Johnson operated were designated as Full Food Service and the others were designated as Dining Facility Attendant services. Full Food Service ("FFS") encompasses all aspects of feeding the troops at Fort Bliss including food preparation and day-to-day operation of dining facilities. Dining Facility Attendant ("DFA") services are similar, but do not include food preparation, as those services are performed by uniformed personnel. If a contract provides for limited food preparation or even one cook available to fill contingencies, the contract is characterized as FFS by the Army. Since contract W911-SG-04-D-003 contained some facilities with food preparation, the contract was labelled as FFS by the Army. The Army maintains the Act only applies to dining facilities contracts for FFS. TWC maintains the Act applies to all dining facilities contracts that pertain to the operation of a dining facility, regardless of whether the Army designates the dining facilities as FFS or DFA.

14.    In the latest procurement, the Army chose to separate the dining facilities contract for FFS and DFA services into two separate contracts. On June 16, 2014, the Army issued Solicitation No. W911SG-14-R-0003 for a FFS dining facilities contract at Fort Bliss that properly included giving DARS a Randolph-Sheppard priority. But on July 2, 2014, the Army issued Solicitation No. W911SG-14-R-0005 (the "Solicitation") carving out the DFA dining halls into a separate dining facilities contract as an exclusively small business set-aside procurement, which did not allow DARS to bid for the contract because it did not qualify as a small business. DARS requested that the Solicitation be amended to comply with the Act on July 15, 2014, but the Army denied its request on July 17, 2014. Although the Act's priority

supercedes award preferences found in more general preference programs,[7] by restricting the competition to small businesses, the Army believed its actions would make DARS ineligible to even compete for the contract for DFA services.[8]

15.    The DOE, which is responsible for implementing the Act and promulgating its regulations, makes no distinction between DFA and FFS contracts.  Those labels are constructs of the Army's own regulations. Because the Army is not charged with implementing the Act, how it labels a dining facilities contract cannot change the Act.  The operative inquiry is whether the contract pertains to the operation of a dining facility. Here, TWC maintains that the Act does apply to dining facilities contracts for DFA services because those contracts pertain to the operation of a dining facility.  In fact, both parties' witnesses testified that "obviously" DFA services relate to the operation of a cafeteria contract.  Chief Warrant Officer Campbell testified those services were "an inherent part of the [cafeterias] operation."

16.    The Performance Work Statement defining the requirements of the contract for the dining facilities contract for DFA services at Fort Bliss explains that the contract includes "all functions, tasks and responsibilities normally performed by a Food Service Operation."  Mr. Johnson explained that "Food Service Operation" meant a cafeteria. The Performance Work Statement also contained a requirement that the contractor hire management and supervisory personnel, including a contract project manager and DFA supervisors.  Additionally, it requires that the contractor perform a variety of tasks in areas including pot and pan cleaning and other sanitation related functions in the dining facilities.

17.    The Performance Work Statement includes various managerial tasks related to the operation of a cafeteria. The Army requires that any bidder have eight years of comparable

---

[7] *See NISH v. Rumsfeld,* 348 F.3d 1263, 1272 (10th Cir. 2003); *NISH v. Cohen,* 247 F.3d 197, 205 (4th Cir. 2001).
[8] On August 13, 2014, the Army notified DARS that DARS would not be considered for the DFA services contract because DARS's proposal disclosed that DARS was not a small business.

military food service experience, thus recognizing that the DFA contract will be for management of cafeteria operations.   Moreover, the Performance Work Statement provides that the contractor will be responsible for categories of tasks relating to the operation of the cafeterias at Fort Bliss, including washing dishes, scrubbing pots and pans, and cleaning and sanitizing tables, floors, and equipment.  It was also unrefuted at the arbitration hearing that the dining facilities could "absolutely not" operate without the performance of the task listed in the DFA contract.  Further, the job functions in the DFA contract were integral to the safe, efficient, and hygienic operation of dining facilities.

18.    At the arbitration, the Fort Bliss contract specialist, Philip Johnson, testified that the decision to split the one contract for the dining facilities at Fort Bliss, which encompassed the operation of both the FFS and DFA facilities, into two contracts was based upon guidance from the Army, and no law or regulation prohibited continuing including FFS and DFA services under one contract as the Army had done for the previous decade.  He further testified that the split of the contract into two contracts accomplished the dual goals of giving other groups an opportunity to bid on the newly created DFA contract and insuring that DARS would not have an opportunity to bid for the new DFA contract.

19.    The Army guidance provides that separating a single contract containing FFS and DFA mess halls into two contracts is not required by law, but rather should be a business decision based on whether such separation is in the "best interests of the Government."  At the time the Army conducted the business analysis here, DARS was the incumbent contractor and had been so for over a decade.  Historically, the FFS and DFA services were combined in one contract, and the previous Randolph-Sheppard food service contractor had been successful.

20.    The Army guidance also directs that when deciding whether to split a dining facilities contract into two, the ultimate decision should be consistent with the Army's cost savings goals.  If the business case analysis concludes that the best course of action is to retain a single combined FFS contract, the contracting officer will conduct the procurement in accordance with the Act, rather than splitting it.

21.    At Fort Bliss, the limited business case analysis conducted by the Army found that the expected costs of administering multiple contracts outweighed the expected benefits of multiple awards: "Expected costs of administering multiple contracts outweighs the expected benefits of making multiple awards – Fort Bliss does not have adequate resources to monitor and administer multiple DFA contracts."  Contract specialist Johnson explained that the cost of administering multiple contracts would far outweigh the benefits.  He agreed that "there is a cost savings associated with one provider managing, staffing, scheduling and executing the entire program." The parties agreed at the hearing that it was "obviously feasible" for the Army to continue to provide all dining facility services to the troops under one contract.

22.    This is important because if a governmental agency intends to limit any placement or operation of a cafeteria contract based on the finding that such placement or operation would adversely affect the interest of the United States, that agency must fully justify its intention in writing to the Secretary of Education.[9] The Secretary of Education then will determine if such limitation is justified, and the Secretary's determination is binding on the agency.[10] However, the Army never tried to justify their limitation on the existing operations of the DFA facilities by DARS, and the Secretary of Education, therefore, never made a determination whether such limitation was justified.

---

[9] 20 U.S.C. § 107b(2).
[10] *Id.*

23.    There are currently two dining facilities contracts, one for the FFS dining facilities and one for the DFA facilities.  DARS/TWC has been operating both dining facilities contracts pending the arbitration pursuant to a settlement agreement with the Army.

## Count I

The Panel erred in its conclusion that the Army did not violate the Act when it issued a Solicitation for a dining facilities contract for DFA services without applying the provisions of the Act to the Selection Process.  The Act directs the DOE, not the Department of the Army, to promulgate regulations regarding the Act's application to cafeterias.  The parties agree that all of the dining facilities in question in the DFA contract were cafeterias, and that DFA contracts are dining facilities contracts.  The regulations promulgated by the DOE provide that the Act's priority shall apply to all contracts pertaining to the operation of cafeterias on federal property. In this regard, the Panel's Decision and Award ignores the Act, the implementing regulations, and the *Chevron* deference to which those regulations are entitled.  As a result, the Panel's decision is arbitrary, capricious, constitutes an abuse of discretion, is otherwise not in accordance with the provisions of the Act or its regulation, and is unsupported by substantial evidence.

## Count II

The Panel majority erred in its Decision and Award by not addressing whether it was appropriate for the Army to eliminate an existing Randolph-Sheppard opportunity.  The Act provides that "[a]ny limitation on the placement or operation of a vending facility based on a finding that such placement or operation would adversely affect the interests of the United States shall be fully justified in writing to the Secretary [of Education], who shall determine whether such limitation is justified."  By failing to address the Army's elimination of the existing Randolph-Sheppard opportunity, the Panel's Decision and Award ignores the Act, is arbitrary,

capricious, and constitutes an abuse of discretion, and is otherwise not in accordance with the provisions of the Act, and is unsupported by substantial evidence.

## VI.     PRAYER AND RELIEF

WHEREFORE, the Texas Workforce Commission prays this Court to find as follows:

A.     That a military dining facility contract for Dining Facility Attendant services is subject to the Randolph-Sheppard Act;

B.     That the Army inappropriately circumvented the Randolph-Sheppard Act by splitting an established Randolph-Sheppard vending facility contract into two contracts for discrete cafeteria services without obtaining the approval of the Secretary of Education; and

C.     Such other and further relief as it deems just and proper.

Respectfully submitted,

By: _____

Peter A. Nolan
Texas Bar No. 15062600
pnolan@winstead.com
WINSTEAD PC
401 Congress Avenue, Suite 2100
Austin, Texas 78701
(512) 370-2800
(512) 370-2850 (Fax)

AND

Chris D. Prentice
State Bar No. 16248990
Chris.Prentice@twc.state.tx.us
Assistant General Counsel
TEXAS WORKFORCE COMMISSION
Office of the General Counsel
101 East 15th Street, Room 608
Austin, Texas 78778-0001
(512) 936-0373
(512) 463-1426 (Fax)

*Attorneys for Texas Workforce Commission*